J-S44045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.L.R. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2481 EDA 2025 |

Appeal from the Decree Entered September 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000289-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: K.J.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.L.R. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2482 EDA 2025 |

Appeal from the Decree Entered September 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000290-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: K.N.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.L.R. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2483 EDA 2025 |

Appeal from the Decree Entered September 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000291-2025

J-S44045-25

BEFORE: LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED FEBRUARY 9, 2026**

N.L.R. ("Mother"), appeals from the decrees involuntarily terminating her parental rights to her three adopted children: twin daughters, K.L.R. and K.N.R., born in August 2015, and son, K.J.R., born in August 2017 (collectively, "the Children").[1]  Mother's counsel, Lisa Visco, Esquire ("Counsel"), has filed an application to withdraw and an accompanying brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After review, we grant Counsel's application to withdraw and affirm the decrees.

We gather the relevant factual and procedural history of this matter from the certified record.  In April 2024, the Philadelphia Department of Human Services ("DHS") received a report alleging that the Children were suffering from malnutrition and were truant from school.  ***See*** N.T., 9/17/25, at 8.  Upon investigation, DHS learned that the Children are autistic and were then nonverbal, and they received autism support services and speech therapy in school.  ***See id***. at 19; ***see also*** DHS Exhibit 3, at 13.[2]  Six days

_____

[1] Mother adopted the Children in a single-parent adoption.  ***See*** DHS Exhibit 3, at 1-2.  The record does not disclose when this adoption occurred, nor does it contain any information regarding the Children's biological parents.

[2] The record reveals that K.L.R. and K.N.R. were verbal by the time of the termination of parental rights hearing.  ***See*** N.T., 9/17/25, at 19.  However, it appears K.J.R. remained nonverbal throughout the proceedings.  ***See id***.

- 2 -

after this initial report, K.J.R. was found alone and unsupervised at a local water ice stand. *See* N.T., 9/17/25 at 8, 19. Less than three months later, on July 9, 2024, DHS received a report that K.J.R. was again found unsupervised and alone, this time at a fire station. *See id*. at 7-8. When DHS retrieved K.J.R. from the fire station and went to Mother's home, they found Mother asleep on the second floor. *See id*. A court placed the Children in the emergency protective custody of DHS, and, three days later at a shelter care hearing, confirmed the Children's placement together in the same foster home.

The court adjudicated the Children dependent on August 7, 2024, and set a permanency goal of reunification. In furtherance thereof, Mother was ordered to, *inter alia*: (1) complete a parenting capacity evaluation ("PCE"); (2) complete the parenting program at the Achieving Reunification Center ("ARC"); and (3) attend supervised visitation with the Children. DHS assigned a Community Umbrella Agency ("CUA") to provide services to Mother in connection with these objectives. The certified record reflects that Mother failed to comply with, or make progress concerning, these objectives.

The family's CUA case manager, Brenda Smith ("Ms. Smith"), testified that Mother never completed the necessary steps to participate in the PCE,

which included being fingerprinted. *See* N.T., 9/17/25, at 12-13, 41-42.[3] Consequently, the PCE was never performed on Mother, and, therefore, CUA never received a recommendation on the services Mother needed to improve her parenting capacity. *See id*. at 12-13, 42. Ms. Smith also testified that Mother did not complete the ARC parenting classes, despite being referred several times. *See id*. at 9-10. Mother testified that she started the classes one week before the termination hearing. *See id*. at 29, 35.[4]

Ms. Smith testified she spoke to Mother several times about the two incidents where K.J.R. was found unsupervised and alone. *See id*. at 13-14. Ms. Smith stated that in September 2024, Mother claimed that her neighbors opened the door to her apartment and kidnapped K.J.R. *See id*. at 14. Ms.

_____

[3] Ms. Smith explained Mother needed to be fingerprinted because her background check "came back that she had four social security numbers." N.T., 9/17/25, at 12-13. Although Mother initially submitted to fingerprinting, Ms. Smith learned in April 2025 that the first attempt to take a fingerprint for the criminal background failed. *See id*. at 41-42. Ms. Smith testified that when she informed Mother she needed to submit new fingerprints, Mother responded, "Well, y'all know that I had to pay." *Id*. Mother never submitted new fingerprints. At the termination hearing, Mother testified that she did not understand why fingerprints were necessary, she never used another social security number, and she was a victim of identity theft. *See id*. at 39.

[4] When asked by Counsel why she did not start ARC classes earlier, Mother testified she was gang raped shortly after the Children's removal from her care and "admitted into a program." N.T., 9/17/25, at 30. Although Mother testified that she told Ms. Smith about the sexual assault, Mother did not produce a police report or documentation of treatment for the assault. *See id*. at 37. Nothing in the detailed docket entries for the dependency proceedings refers to a sexual assault against Mother. *See* DHS Exhibit 3, at 11-16.

Smith testified when she discussed the incidents with Mother again, in January and September 2025, Mother stated that "someone climbed into her window" and kidnapped K.J.R. while she was taking a bath. *Id*. at 14. At the termination hearing, Mother testified she arranged for a babysitter to supervise K.J.R. during the two incidents and also continued to claim K.J.R. was taken from her home. *See id*. at 34. She asserted her ex-husband had done so, although she admitted she had no proof to support this assertion. *See id*. at 34-35.

Mother testified that she was diagnosed with "bipolar schizoaffective" disorder and depression. *Id*. at 38. Mother stated she attended a voluntary inpatient treatment program for "my mental . . . my emotional" health in July and August 2025, and she was participating in outpatient treatment. *Id*. at 31; *see also id*. at 30, 32-33, 37-38. Ms. Smith testified that Mother did not provide CUA with any corroborating documentation. *See id*. at 43, 46.

Mother was granted weekly supervised visits with the Children, but failed to participate consistently. *See id*. at 9, 11-12, 43-44. Indeed, the court eventually ordered both 24-hour, and same-day, confirmation of Mother's visits due to her failures to appear. *See id*. CUA also had concerns about Mother's behaviors and her conversations with the Children during the visits. *See id*. at 11-14, 45-46. Mother would come to visits late and leave early. *See id*. at 11-12. Additionally, Ms. Smith testified Mother appeared for a virtual visit wearing only a towel and told Ms. Smith she "had other things

she had to do." *Id*. at 12. Ms. Smith also testified that Mother would bring up inappropriate topics to K.L.R. and K.N.R. ***See id***. at 45-46.

On June 17, 2025, DHS filed petitions to involuntarily terminate Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[5] The trial court held an evidentiary hearing on the petitions on September 17, 2025, when K.L.R. and K.N.R. were ten years old, and K.J.R. was eight years old. The Children were represented by their guardian *ad litem* ("GAL") from the underlying dependency proceedings, Juliet Perry, Esquire ("Attorney Perry").[6] DHS presented the testimony of Ms. Smith. Mother testified on her own behalf.

By decrees entered on September 17, 2025, the trial court involuntarily terminated Mother's rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On September 30, 2025, Counsel filed timely notices of appeal and contemporaneous concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion on October 21, 2025, directing this

---

[5] Mother was served with the petitions on July 17, 2025. ***See*** DHS Exhibit 2.

[6] This Court previously remanded to the trial court with instructions to make a definitive finding concerning whether a conflict existed between the Children's best and legal interests. ***See*** Remand Order, 12/30/25. In its response, the trial court determined that no conflict existed between the Children's best and legal interests that would preclude Attorney Perry's representation of the Children in termination of parental rights proceedings. ***See*** Trial Court's Supplemental Statement, 1/9/26.

Court to its explanation of its termination decision on the record in open court at the hearing. *See* Trial Court Opinion, 10/21/25; *see also* N.T., 9/17/25, at 51-55. This Court consolidated Mother's appeals *sua sponte* on October 23, 2025.

As noted above, Counsel filed an *Anders* brief in this Court, along with an application to withdraw from her representation of Mother.[7] When counsel seeks to withdraw pursuant to *Anders* and its progeny in a termination of parental rights case, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. *See In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020). To satisfy the procedural requirements in requesting to withdraw from representation, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to [her] petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

---

[7] The *Anders* procedure applies to petitions to withdraw from representation in cases involving the involuntarily termination of parental rights. *See In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992).

In this case, Counsel has filed an application to withdraw and an *Anders* brief, wherein she certifies that, following a conscientious and thorough review of relevant legal authority and the certified record, she believes Mother's appeal is frivolous. In her application to withdraw, Counsel avers that she served Mother with a copy of her *Anders* brief. Further, Counsel attached a letter to her application, in which she affirms that she simultaneously served Mother with her *Anders* brief. The letter advised Mother of her rights to retain private counsel or raise additional arguments that she deems worthy of this Court's attention.[8] Thus, we conclude that the procedural requirements of *Cartrette* and *Millisock* are satisfied.

In addition, our Supreme Court has set forth the following requirements for *Anders* briefs:

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

The *Anders* brief submitted by Counsel provides a satisfactory summary of the procedural and factual history of this matter, which includes

---

[8] To date, Mother has not filed any response in this Court.

citations to the record. *See Anders* Brief at 6-8. Counsel's *Anders* brief also contains the necessary discussion of controlling Pennsylvania law concerning the involuntary termination of parental rights. *See id*. at 10-13.

Substantively, Counsel avers that her review of Mother's case revealed no arguable claims that could support non-frivolous challenges to the involuntary termination decrees. *See id*. at 10-14. Specifically, Counsel concludes that any claim Mother would raise is frivolous in light of the record evidence supporting the decrees. *See id*. Based upon the foregoing, we conclude that Counsel's brief complies with the requirements of *Santiago*. *See Santiago*, 978 A.2d at 361. Thus, we conclude that Counsel has substantially complied with the technical and procedural requirements for withdrawal under *Anders* and *Santiago*. Accordingly, we must next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

We review the decrees for an abuse of discretion. *See Interest of M.E.*, 283 A.3d 820, 829 (Pa. Super. 2022). This Court has further explained:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id*. at 829-30 (internal citations, brackets, and quotation marks omitted).

The involuntary termination of parental rights is governed by section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id*. at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the trial court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's determination as to any one subsection of section 2511(a), in addition to section 2511(b), in order to affirm

an involuntary termination decree. *See M.E.*, 283 A.3d at 830 (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

In her *Anders* brief, Counsel concludes that the trial court properly terminated Mother's parental rights pursuant to section 2511(a) and (b). *See Anders* Brief at 10-14. Our analysis will focus upon section 2511(a)(2) and (b), which provide, as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

The grounds for termination of parental rights under section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those

- 11 -

grounds may also include acts of refusal and incapacity to perform parental duties. *See In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021), *abrogated on other grounds by Interest of K.T.*, 296 A.3d 1085, 1110 n.23 (Pa. 2023). Section 2511(a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being," especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010) (internal citation and emphasis omitted).

We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017). At a termination hearing, the trial court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during the dependency proceedings. *See S.C.*, 247 A.3d at 1105.

If the trial court concludes that adequate grounds for termination exist pursuant to section 2511(a), the court then turns to section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a section 2511(b) inquiry must include consideration for the bond between the parent

and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained[.]" *K.T.*, 296 A.3d at 1109. The "severance of a necessary and beneficial relationship is the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm." *Id*. at 1109-10 (internal citation omitted).

The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). "However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *Id*. (citing *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008)).

Our Supreme Court has further recognized that "case law indicates that [the parental] bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the [s]ection 2511(b) analysis." *K.T.*, 296 A.3d at 1109 (internal citation omitted). Further, trial courts "must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id*. at 1106 (internal citation omitted).

Counsel notes Mother's intended claim that DHS did not meet its evidentiary burden under section 2511(a). *See Anders* Brief at 10. Counsel explains that any such argument under section 2511(a)(2) would be frivolous

because Mother, due to her mental health issues and continuing incapacity, caused the Children to be without essential parental care, refused to remedy the underlying causes of her incapacity, and, among other deficiencies, failed to enroll in, or complete, a mental health treatment program before the filing of the petitions to terminate her parental rights. *See id*. at 11-12. Furthermore, Counsel indicated Mother did not complete any of her services, including attending ARC for parenting and housing issues and participating in a PCE. *See id*. at 11.

When granting DHS's petitions to terminate Mother's parental rights, the trial court noted Ms. Smith was a credible witness, and, conversely, that "Mother's testimony was not fully credible." *See* N.T., 9/17/25, at 51. As to section 2511(a)(2), the trial court concluded that Mother did not demonstrate an ability to be able to meet the needs and welfare of Children, and Mother did not remedy the conditions and causes of the incapacity. *See id*. at 52. The trial court emphasized it ordered a PCE "to address any issues that [M]other had and to help her outline what she needed to do in order to be able to demonstrate an ability to parent these children[,]" but Mother did not participate in a PCE. *Id*. at 53. The court determined that because Mother did not actively engage in her case plan objectives for nearly one year and only started trying to engage with any of her objectives several months *after* the filing of the petition, additional time would not assist Mother in remedying the causes of her incapacity. *See id*.

After review, we agree with Counsel that Mother's intended challenge to the evidence concerning section 2511(a)(2) is frivolous. Children were removed from Mother's care because she was unable to appropriately parent and supervise the Children, in particular, K.L.R., who was found alone and unsupervised outside the home on two separate occasions. Mother failed to engage in any of the services to achieve her case plan objectives before the filing of the petitions to terminate her parental rights. *See* N.T., 9/17/25, at 10-15. Critically, Mother never complied with basic requirements to participate in a PCE, which would have provided her, and the court, with concrete steps necessary to achieve reunification. We acknowledge Mother attempted to explain her reasons for her noncompliance with her case plan objectives. *See id*. at 30. Moreover, Mother asserted, without having provided CUA with appropriate documentation, that she took some self-help measures shortly before the termination of parental rights hearing. *See id*. at 28-33. However, the trial court acted within its discretion to find Mother's testimony "not fully credible," and reject Mother's recent attempts to follow through on necessary services to be untimely and/or disingenuous. *See M.E.*, 283 A.3d at 829-30; *S.C.*, 247 A.3d at 1105. For these reasons, we discern no factual or legal basis to disturb the trial court's decision that the evidence was sufficient to terminate Mother's parental rights under section 2511(a)(2).

Turning to section 2511(b), Counsel identifies Mother's claim that strong parent-child bonds existed which would be detrimental to sever. *See Anders*

Brief at 12. Counsel asserts that, based on the record, there was no merit to Mother's belief that the Children would suffer a negative effect if her parental rights were terminated. *See id*. at 13.

The trial court addressed section 2511(b) and found there was no parent-child bond between the Children and Mother because the Children did not look to her to meet any of their needs. *See* N.T., 9/17/25, at 54-55. The court instead found that the Children looked to the foster parent to meet their needs, no necessary and beneficial relationship remained as between Mother and the Children, and Children would not suffer any irreparable harm because they favored adoption. *See id*.

We agree with Counsel's assessment that a challenge to the trial court's section 2511(b) analysis lacks any basis in the record or the law. The record contains no testimony with respect to any parental bond between Mother and the Children. Therefore, it was reasonable for the trial court to infer that none existed. *See J.M.*, 991 A.2d at 324. Ms. Smith testified that the Children would not suffer "irreparable harm" from termination because "[f]or over a year . . . they have not looked to [Mother] for any of their basic needs at all. They don't look to her for any . . . comfort or support." N.T., 9/17/25, at 15.

In contrast, Ms. Smith testified that the foster parent meets the Children's needs. *See id*. at 17. Ms. Smith stated that the Children and the foster parent share a "very nurturing" and "very healthy" relationship. *Id*. at 16. Regarding the Children's desires, Ms. Smith noted that K.J.R. is unable to

express his wishes due to being nonverbal. *See id*. at 19. She testified that K.L.R. and K.N.R. want to be adopted by their foster parent. *See id*. Ms. Smith stated that the foster parent is a pre-adoptive resource for K.L.R. and K.N.R. *See id*. at 17. Ms. Smith testified that the foster parent is not a pre-adoptive resource for K.J.R. for reasons unspecified in the record, but the foster parent "wants to continue to have him until we're able to find an adoptive home for him because she's very connected with him." *Id*.[9]

The foregoing evidence clearly supports the trial court's determination that the Children's developmental, physical and emotional needs and welfare were best served by termination of Mother's parental rights. Accordingly, we agree with Counsel's assessment that Mother's appeal as to section 2511(b) is frivolous.

Based upon our independent review, the certified record reveals no preserved non-frivolous issues that would arguably support Mother's appeal. We agree with Counsel's assessment that this appeal is wholly frivolous. Thus, we grant Counsel's application to withdraw as Mother's attorney and affirm

_____

[9] The record does not reveal that K.J.R. had any behavioral problems. In addition, the record does not indicate the extent of K.J.R.'s medical needs.

- 17 -

the decrees involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Application to withdraw granted. Decrees affirmed.

President Judge Lazarus joins this decision.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/9/2026